WILLIAM H. STANFORD, PLAINTIFF IN ERROR, v. WILLIAM LYON, DEFENDANT IN ERROR.

1. By a devise to S. of "all that part of the premises situated on the southeasterly corner of Elm and Mulberry streets, now occupied by him," the devisee takes that part of the premises with all the rights and privileges in the yard, parcel of the premises, which he had held and occupied of right under and by virtue of his agreement with the testator.
2. Parol evidence is competent to show the terms of such agreement, and the extent of the occupation by virtue of the contract.
3. This case distinguished from *Fetters* v. *Humphreys*, 4 *C. E. Green* 471.

In error to Supreme Court.

The facts of the case fully appear in the opinion of the court.

For the plaintiff, *Vanatta.*

For the defendant, *Thos. N. McCarter.*

The opinion of the court was delivered by

VAN SYCKEL, J. Doctor Luther G. Thomas, by his will, dated March 13th, 1863, devised as follows : " *First.* I give, devise and bequeath all my real estate wheresoever situated, of which I may die seized or possessed, to my brother, Lemuel Thomas, and his heirs and assigns forever ; upon conditions, nevertheless, that he shall permit William H. Stanford to carry on the business of a druggist in that part of the premises situated on the southeasterly corner of Elm and Mulberry streets, now occupied by him, as long as he shall desire to use it for that purpose, at an annual rent not to exceed one hundred dollars ; I make this condition solely in favor of said Stanford, and do not intend it to extend to his representatives or assigns."

On the premises mentioned in the devise, in the rear of the drug store, there was an open space or yard containing a water hydrant, a privy, and considerable room for storage. When the will was executed, and when the testator died, Stanford, as a partner with the testator, was carrying on the business of a druggist, and used the yard for storage, and had free access for himself and his clerks to the hydrant and privy, as convenience required. Tenants of other portions of the building on the premises used the yard, hydrant and privy in common with those who carried on the drug business. In the articles of partnership entered into between Stanford and the testator, in September, 1862, there is this clause : " It is also further understood and agreed that the building where the business has heretofore been carried on, and where it is still to be carried on by the new firm now formed, shall still remain the individual property of the said Luther G. Thomas, and that for the use and rent of the store, cellar and office used in the said business, the new firm shall pay to him the sum of one hundred dollars per annum."

The testator died May 1st, 1864, since which time Stanford has continued in the enjoyment of the use of the yard as aforesaid, until October, 1870, when he was excluded from its further use by the defendant, Lyon, the then owner of the

title devised to Lemuel Thomas. For that interruption and disturbance Stanford instituted an action on the case in the Supreme Court.

On the trial of the cause the plaintiff offered to prove what the understanding was between the testator and himself, as landlord and tenant, as to the rights of the occupants of the dwelling and store respectively in the yard. That the plaintiff and testator, as partners, used, in connection with the store, the yard and privy in the yard, in common with the various tenants in the other parts of the house; that it was understood by him and the tenants that he should do so. And the plaintiff further offered to prove the declarations of the testator in regard to the conveniences and parts of the premises which he reserved as being necessary to and connected with the store, on letting the dwelling part of the house to the tenants to whom he let the same.

This evidence was overruled, and the plaintiff non-suited, and thereupon errors are assigned.

It is insisted, on behalf of the defendant, that this case is controlled by the decision of this court in *Fetters* v. *Humphreys*, 4 *C. E. Green* 471. The precise point adjudicated there was, that the words "occupied by me," were merely descriptive of the body of the premises devised, and would not newly create an easement over other lands of the testator. The owner of the fee can have no easement in his own lands, and in legal contemplation there was no right of way upon which the words of the will could operate. The case was properly treated as if no such way had ever been used.

In the case of *Polden* v. *Bastard*, 4 *Best & S.* 263, cited with approval in Fetters v. Humphreys, the devise was of "the house, out-house and garden, as now in the occupation of T. A."

T. A. had been accustomed, with the knowledge of the testatrix, to use a well on her adjoining lot, and it was held that a right to the pump did not pass to T. A. The rule applied, that these words were merely descriptive of the lands

devised, and did not create a new easement, where none before existed.

The use of the pump was merely permissive, and had not, by any act of the testatrix, up to the time the devise took effect, ripened into a right in the tenant.

But, I apprehend, that if T. A. had held under a lease from the testatrix, expressly giving the use of the pump, this devise, while it could not newly create an easement, would have passed the old subsisting one. The opinion of each of the three judges in this case adverts to this distinction.

Wightman, J., said: "The circumstances of the present case show that the pump was not used by him in the exercise of a right to use it as an easement."

Crompton, J., said: "If this had been an old easement attached to the cottage, it would pass by the words "appertaining or belonging," but to create a new easement, which did not exist before, the will must have devised the cottage " with the pump therewith enjoyed."

And Blackburn, J., after referring to the fact that no right in the tenant to use the pump was shown, said: "It is necessary to show words sufficient to express an intention by the devisor to create this easement *de novo*, and annex it to the cottage devised."

There are no such words; there is only a devise of the cottage itself, " as now in the occupation of Thomas Answood; and he had enjoyed merely a license to go to the pump."

In *Thompson* v. *Waterlow, Law Rep., 6 Eq.* 36, Lord Romilly drew a distinction between ways existing of right, prior to the unity of seizin, and those made by the owner for his own convenience while he owned both closes, and this distinction was recognized in the subsequent case of *Langley* v. *Hammond, L. R., 3 Exch.* 161.

All the cases enforce the doctrine that an easement can be newly created only by words of very clear expression, showing an intention to annex it to the corpus of the grant.

The rule is undoubtedly a wise one, and the only question is whether it applies to this case.

If one should lease his store on State street, the right of the tenant to show by parol that a court yard was part of the demised premises would not be questioned.

So, if the owner of a building should let it by parol, in parcels, defining clearly the use which the several tenants should have of the conveniences in the yard, parcel of the premises, and pending the term should grant to the several tenants "that part of the demised premises occupied by them, respectively," there is nothing in Fetters v. Humphreys which could exclude either grantee from any privilege in the yard, which he had enjoyed of right under the terms of the lease. This would not found a new right, upon words like those used in the cases referred to, but would preserve and continue an old right long enjoyed as part and parcel of the thing granted, and which had not been severed from it. The case under consideration is analogous.

The will, in effect, gives the fee to Lemuel Thomas, subject to a life estate in Stanford, to carry on the business of a druggist in that part of the premises occupied by him. The intention of the testator manifestly was to continue Stanford in the possession of the part devised to him, with all the rights he held under the lease during the partnership. By rights I mean legal rights, such as he could have enforced under his agreement with his lessor. As in that class of cases represented by Press v. Parker, 2 Bing. 456, it was competent to show by parol the extent of the premises devised, and in Thompson v. Waterlow, to establish what ways existed of right prior to the unity of seizing; so in this case, parol evidence should be received to show what part of the premises was of right used by Stanford in carrying on the drug business. What part of the premises were so used and occupied can be ascertained only by a resort to extrinsic testimony, so that to give the grant effect at all upon the subject matter of the devise, and to determine what will satisfy the description, parol evidence is a necessity.

If, by the contract, Stanford had the right to use the conveniences of the yard, they will follow the devise, but if he

enjoyed them merely by the permission and license of his partner, under the rule in Fetters v. Humphreys, no right can arise by implication from the words of the grant, for that would create an easement *de novo* without clear words of expression to that end.

The recital in the articles of co-partnership, and in the agreement of May, 1868, are evidence of the contract, but do not conclude the plaintiff.

In my opinion, the court below erred in refusing to hear the testimony offered on the part of the plaintiff to show what the terms of his lease with the testator included by its description.

The question, "what was the understanding between you and Dr. Thomas, as landlord and tenant, as to the rights of the occupants of the store and dwelling-house, respectively, in the yard," would have been inadmissible, if by the use of the word "understanding," it had been the object of the plaintiff's counsel to draw out the witness' interpretation of the contract to be derived from the conversation between Dr. Thomas and himself, instead of the language which had passed between them. That this testimony was not excluded on this technical ground is apparent from the further refusal to permit the plaintiff to prove the declarations of the testator in regard to the conveniences and parts of the premises, which he reserved as being necessary to, and connected with, the store, on letting the dwelling part of the house to the other tenants.

The plaintiff had a right to show, either by the conversation of Dr. Thomas with him, or by his declarations to other parties, what was comprehended in the descriptive words of the partnership agreement.

That part of the premises devised to Stanford is co-extensive with that which he of right had held and occupied under and by virtue of any valid agreement with the testator.

The plaintiff cannot rest his claim to these privileges upon the ground that they are apparent or continuous easements, nor that they are absolutely essential to the enjoyment of the

thing granted, and, therefore, pass as incident to it. It is not like *Underwood* v. *Burrows*, 7 *Car. & P.* 26.

In that case the water closet was expressly let; the use of the door bell and knocker were incident to a right of way, which was implied of necessity, and the skylight on the staircase was essential to enable the tenant to traverse the way. The grant of these privileges would be implied as clearly as the right to use the staircase, when rooms are let on the second floor, and the court said, that it would require an express exception to exclude the tenant from them.

The result is that the judgment below should be reversed.

*For reversal*—The CHIEF JUSTICE, BEDLE, DALRIMPLE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY. 10.

*For affirmance*—None.